Thank you, your honor. James Farney, on behalf of the appellate, and Irwin J. Edwards. The threshold issue in this case is whether Mr. Edwards has a protected property interest in his disability claim. The government argues that veterans like Mr. Edwards do not have protected property interest in their claims and therefore are not entitled to due process. We disagree. As it turns out, this is an issue of first impression for this court. We think it's an important constitutional question and one that's right for review. Now whether an applicant for a benefit, as opposed to somebody who's already receiving a benefit, has a protected property interest is a question the Supreme Court has not exactly answered. What the Supreme Court has said is that in order to have a protected property interest, the applicant has to have more than simply a unilateral expectation of the benefit. They have to have what the Supreme Court called a legitimate claim of entitlement to the benefit. Now several circuit courts have applied that test in the context of Social Security benefits and also in disability retirement benefits, and have found that applicants for Social Security benefits and disability retirement benefits do in fact have protected property interests. But suppose they do, then what in fact is the due process right that we're talking about today? Because I understand that the Veterans Administration has a system for the appointment of representatives for incompetent veterans who are applying for benefits. And why doesn't the existence of that system, assuming that you're right that there's a due process right there, why doesn't that system satisfy whatever due process obligation the government has with respect to incompetent veterans? And if you have a complaint about that, you can complain about the dispensatory bond. Well, the U.R. Director is a system for appointing guardians, and if the VA had appointed a guardian in this case, that likely would have satisfied the due process requirement of notice, which is the issue that we have here today. Your question seems to ask whether there are enough procedural, and I should say statutory, requirements in the system now that we don't need to go to the question of constitutional due process. That also seems to be what the government's arguing, that there is no due process right here. All that the veteran is entitled to is what the statute allows. Well, I think you're saying something a little bit different. What I'm saying is not that there isn't a constitutional right, but to the extent that there is a constitutional right, why doesn't the statutory system satisfy that? Well, all I can say to that, and I hope I'm answering your question, is if the government had appointed a guardian at Lightning, which is one of the things that we pointed out in our brief, is a mechanism for overcoming the problem of mentally incompetent applicants. If the government had done that, which they did not, then we perhaps would not be here, because Mr. Edwards likely would have received a realistic notice. Did he have counsel pretty much throughout this proceeding? I'm sorry, Your Honor? Did Mr. Edwards have counsel throughout a great deal of this proceeding? Starting at the CAVC, he had counsel. He was pro se at the time that the notice was sent in 1988 regarding his 1987 request to reopen his application. He was proceeding pro se at that time. Let me see if I understand exactly what your submission is. Again, accepting the argument that there is a constitutional right to due process, is your contention that the claimant was entitled to some kind of tailored notice or some other mechanism, such as appointment of a guardian at Lighting, that would have been designed to give him adequate notice simply because of the fact that, assuming that he was incompetent, that he was incompetent, or was that requirement of tailored notice triggered by information that would have put the agency on notice that he was incompetent? Well, what we have as a guideline, Your Honor, is Covey. Covey is the Supreme Court. Help me out with which of those two is the answer. The answer, Your Honor, is Covey talked about both. Covey talked about where an applicant for – well, Covey talked about a litigant who was proceeding pro se without a guardian at Lighting and is known to be mentally incompetent. That much we know. Now, in this case, we feel we have the facts to show that the agency did know that he was mentally incompetent. So I'm not sure that the court needs to – The court set up – the Court of Appeals for Veterans Claims said otherwise. Yes, Your Honor. Of course, we contend with the contrary. I guess my point is I don't know that the court needs to reach that specific question. Well, what's your position with respect to that? My position would be it's likely from my reading of Covey that the agency has to know of the mental incompetence in order to trigger the extra notice for the guardian at Lighting. And that seems consistent with what we said in Barrett. Yes, Your Honor. All right. So before I move off of this due process point, I do want to point to one decision which we think is particularly helpful, and that is the Millett decision cited in our brief from the Fourth Circuit. And the Millett decision is one of many in circuit court decisions that have said that a mentally incompetent applicant for a benefit, and that is Social Security benefits, can be entitled to a remand for an evidentiary hearing on that due process claim. And what the Millett court did is it looked at commentary from Justice O'Connor to determine whether or not the applicant was entitled to due process. And what Justice O'Connor said was the distinction between an entitlement and a mere expectancy depends on the degree to which the decision-maker's discretion is constrained by law. And we think that's a good guideline that this court could also use. And we would urge the court to take a look at the Millett decision. And I would like to turn this to you. Are there pieces in the Veterans Administration or the Court of Appeals for Veterans funds in which someone has challenged the failure to appoint a guardian to appoint a representative for an incompetent veteran? Unfortunately, Your Honor, I'm not aware of whether or not there are any. And I do apologize for that. I'm not aware of any either way. But in theory, it seems to me a veteran who didn't get a guardian appointment could complain to the Veterans Administration that they didn't follow the statutory procedure and that they should have appointed someone. Do you say, do you have a position that you couldn't pursue that statutory remedy? I do agree that if there was a failure of a specific statutory remedy, that there is the ability to pursue that. That's right. In this case, we are asserting that this is a due process violation that may be coextensive with the specific issue we've raised in this case of whether it's a due process violation. But that puts us in the position of having to decide a constitutional issue when it may be a statutory remedy. How do we need to reach the constitutional issue? That's the problem. Your Honor, again, I unfortunately don't have the specific answer to your question, although we would be happy to provide subsequent information on that if you so desire. You were saying earlier that you thought the Court of Appeals for Veterans Claims was wrong in saying, I guess that was the language they used, that the appellant did not point to any evidence in the record to suggest that VA was aware of any incompetence or inability to comprehend. Now, Barrett distinguishes between illness, even mental illness, and incompetence or inability to comprehend. And the subset, presumably, of mental illness and illness, even severe mental illness. What, in your view, in the record, would support a conclusion on our part that this statement by the Court was wrong? Your Honor, before I answer that, we first have to evaluate what's the proper standard here. The CABC used a prima facie standard, and it got that standard from a Fourth Circuit decision called Schrader. And if you look at those other decisions, such as Schrader, but there are several others, Parker, Canals, for instance, they use a very de minimis standard for what needs to be shown in order to trigger the remand for the evidentiary hearing. That evidentiary hearing, and in addition, the medical assistance that Barrett requires the VA to provide, is what will develop the record on whether he was actually both mentally incompetent and incapable of understanding notes. So the answer to your question is, that would be developed further on the remand that we're requesting, the remand for an evidentiary hearing. Now, in this case, we believe that the veteran submitted more than enough evidence to trigger that remand. There was specific evidence for- Remand for an evidentiary hearing. Yes, Your Honor, remand for an evidentiary hearing and the duty to assist. In particular, he pointed to VA records showing that he had received a diagnosis for schizophrenia from a VA hospital, that his mental problems stressed all the way back to 1978 when he was in service. He was specifically admitted to a VA hospital just seven months before the critical date of March of 1988 and diagnosed with residual schizophrenia. He was provided medication for that condition, and in the paperwork that was submitted just four months before the critical date of March 1988, the VA noted that his diagnosis- Your Honor, how could we reach any of those facts when the court of inference has already found that the evidence of record does not support the assertion that more tailored notice was required? Your Honor, I would say there's three ways you can reach the facts. How would we reach the facts? First, Ingray Bailey says you can reach facts if they relate to a stand-alone constitutional issue, which I believe we have presented in this case. So that's the first way you can reach the facts. In addition to that, we assert that there are actually legal errors in the way that the CAVC applied what it called the pre-mufascia standard. We don't think the CAVC actually applied, even though it called it a pre-mufascia standard. In reality, it applied a much higher burden of proof to Mr. Edwards than any of the other circuits have applied to similarly situated Social Security applicants. And so we would submit, I'm just going to put it simply, we think that disabled veterans should at least be entitled to the same level of due process that Social Security applicants have been afforded by the other circuits in cases like Schrader and Parker and Canales, where it was a very de minimis standard. And I'll just give you one example. In Schrader, which is the case that the CAVC cited for the pre-mufascia standard, the only evidence that the applicant in that case submitted to justify his due process tolling claim was a single retrospective report from a psychiatrist simply reporting that the applicant had a long history of mental illness. That was enough in Schrader to trigger the evidentiary hearing. And we submit it should be enough in this case, given the wealth of evidence that Mr. Edwards submitted, to likewise trigger an evidentiary hearing in addition to what Baird requires, which is the duty to assist. And we think that this Court can reach that question. Thank you, Mr. Barney. Good morning, Your Honors. May it please the Court. This Court does not need to address whether applicants for veterans' benefits possess a protected property interest because the only disagreement that Mr. Edwards has is with the Veterans Court's finding that his allegation that he was mentally incompetent at the time of the 1980 decision of the VA did not meet the standards in the cases that Mr. Edwards now cites for support. The- Well, suppose we do meet it. I mean, we have a statutory scheme here, which provides for the appointment of guardians. Are there cases in which veterans are challenged, a failure to appoint guardians, and what's happening in those cases? We are not, off the top of my head, aware of any of those cases, and we would be happy to provide the Court with supplemental briefing on that issue. I can tell you that the VA does have regulation which would guide, which would require the VA, once mental incompetency in a veteran who's receiving benefits has been established, to appoint a representative. And- Does a veteran in the government's view, does the veteran have a right to complain if the VA fails to appoint a representative for an incompetent veteran? I'm sure that there is some method of redressing that issue, but I'm not sure what that would be at this point, whether they would have a right to appeal a decision not to do that. But I'm sorry, again, because we don't have the statute of regulation for us in this case. I don't want to say anything about that situation without making that a little more research on that case. I think what is important here is that the Veterans Court said that Mr. Edwards hadn't even made, and again, this Court even looks at pages 14 through 16 of the Veterans Court appeal, that Mr. Edwards says he doesn't even ask for a remand for a hearing. He doesn't even allege that he was mentally incompetent at the time of the regional office decision. All he says was that there were symptoms of mental illness, and this Court embarrassed him. Just merely a diagnosis of mental illness does not demonstrate mental incompetency. So really what we have here is a factual- You were referring to his briefing before the CABC. Before the CABC. He didn't ask for a hearing. He did not ask the Veterans Court for a remand. We don't have those pages in the materials. No, I'm happy to provide that to the Court. I'm sorry that it's not part of the- Well, it might be useful to submit the briefing from the CABC to the clerk's office for, if you would, both counsel. I would be happy to do that. This Court in the PRB West said that disagreeing with a factual finding does not create a constitutional issue, and if this- if the- we know that- What he's saying is something that raised the issue about the hearing. It seems to me he's got a pretty good argument, that there was evidence of mental illness here, and that it may or may not be sufficient that under the Barrett standard, the Barrett standard is applicable, and that there should be a hearing to determine whether he really was incompetent in 1988 or whatever. I mean, that's not an unreasonable position, is it? That's not an unreasonable position, except that the Veterans Court made a factual finding that his allegations did not rise to the level- Factual finding. I thought the Veterans Court didn't make factual findings. I thought what they were saying was that there wasn't enough evidence here to raise the question in the record. Correct, Your Honor. But that's a decision that the Veterans Court can make in the first instance, looking at those facts. Yeah, but we would review that de novo, wouldn't we? I mean, there's no deference due to the Veterans Court at this point, where they're saying there's not enough evidence in the record to raise this question. I'm not aware of any case where this Court said that it could review those facts de novo, and Mr. Edwards has said nothing of that sort. In fact, this Court's own jurisdictional statute seems to indicate that, to the extent that this Court can consider facts in a constitutional claim, it would be the review of facts, not looking at the facts here. Well, review of facts, if there's been a fact finding. But what I understood you to say a moment ago is that there hasn't been any fact finding by the Court of Appeals for Veterans Claims, simply a statement that there's not enough evidence to raise the issue in the record. They don't have hearings. They don't look at witnesses. They don't make fact findings, right? No. But if the Veterans Court had found that Mr. Edwards' allegations, the evidence that he presented was sufficient to raise a concern that the Veterans Court had, that there might have been a mental incompetency at the time of the 1988 decision, the Veterans Court would have the authority to remand that for a hearing. If the Veterans Court made a decision based on the facts presented and the allegations made, that that standard had not been met. I'm not aware of any reason why this Court could consider the evidence anew and say that, in fact, there was sufficient evidence. You know, even in Barrett, this Court said we're not going to consider that in the first instance. And in the cases that... So what do you say, then, where there's this constitutional issue that we can't review a Court of Appeals for Veterans Claims decision saying there's insufficient evidence to raise the issue? Well, I would point the Court to, for example, Pierre B. West, where this Court... It is a slightly different factual scenario, because the claim was entitled to attorney fees, and there was a due process argument. But this Court said that... Contesting the fact that the... Sorry, let me start over again. Where there's been a factual determination that the facts haven't been met, then that does not create a constitutional claim. I'm sorry, I'm not explaining this very well, but... Well, I understand what you're saying. It's probably true that it doesn't create a constitutional claim, but that's not the question. The question here is, in considering a constitutional claim, to what extent can we review a determination by the Court of Appeals for Veterans Claims that there's not enough evidence in the record to raise the issue? And I'm not hearing that there's a case that said that you can't do that. Well, not a de novo reconsideration of the fact finding, or do you just agree that there is no fact finding in the record that you have? It would seem to be anomalous for this Court to have a greater standard of review of the facts than the Veterans Court. I take it that all of the materials in the appendix, which go all the way up to the decision that was made on the 1988 claim, all of those were before the RO. These go back to his initial claim, I guess, in 81. And then a lot of materials, even going back a little farther than that, to the time of his service, and a lot of materials from the 87-88 period. Those were all before the VA at the time of the VA's ultimate determination to deny the claim. In 1988. In 1988. I believe so, yes. And I take it your position is that while those, well, you can tell me, but I proposed this and then you tell me if this is correct, that the materials show a sequence of long-term evidence of severe mental illness, periodic, episodic, and coming in and out of hospitals and so forth. But your contention is that the CAVC was correct in finding that while concluding that while it may have shown severe mental illness, it didn't show incompetence and lack of ability to understand. Is that what you draw from their discussion? That's correct. Part of that is, as the Court can see from the medical records, he goes to the hospital because he hasn't been taking medication, and he gets back on the medication and the doctor says, you're free to return to work, which would indicate that there's a mental competency there. But also that there's no records presented following that year after the denial of the RO in 1988. In most of these cases, I mean, I guess the Covey case was an exception, but you had an adjudication almost simultaneously with the event in that case of insanity and incompetence on behalf of Mrs. Covey. In most of these cases, the focus is going to be on the illness rather than the question of competence. What is, do you think, the burden of the VA to inquire into whether the degree of mental illness is likely to be consistent with or indicative of incompetence? What's the burden against the VA should take the lead to inquire into whether or not this mentally, clearly mentally troubled person is actually incompetent? Can I add to that question just a little bit? Sure. He gets a 50% disability rating. Would this be a better case if it were 100% disability rating? How does that figure into the equation that Judge Bryson is looking out for? Right. Well, certainly, had he received a 100% rating, it would probably be a better case for Mr. Edwards. But even then, we have to look at the rating schedule to see what 100% would really mean. The cases that, the Schrader case, the Brown case, is that the government does not have the burden of doing the initial inquiry into determining whether someone who has a mental illness is mentally incompetent. And it would be probably unreasonable for the VA, every time someone makes a claim of mental illness, to also make an additional inquiry as to whether that mental illness prevented the person from taking care of their affairs and preserving their legal rights. By regulation, where there's been a grant of a compensable award, the VA can make a determination of incompetency, and that would allow a fiduciary representative to be appointed and things like that. And in practice, the VA, where a pro se claimant, where there is a pro se claimant, the VA will make a practice of referring them to Veterans Service Organizations and other nonprofits who could represent the pro se. So I don't think that directly answers your question, but I think that there are some safeguards that are in place, both by regulation and by statute, that protect veterans who may not be able to preserve their rights. There's another fact about this case. There's a 10-year gap before he asked to reopen. Was he totally incompetent during that 10-year gap? Well, there's nothing in the records to suggest that. But the fact that in 1997, Mr. Edwards asked the VA to reopen the case and not to merely submit additional evidence in support of his prior claim does suggest that he perhaps did understand that the 1987 decision was final. And that was not an argument, again, that was raised when Mr. Edwards appeared with counsel before the Board, and it was not even really raised before the Veterans Court. It's really now. But, of course, that might make a better case for duty to assist, wouldn't it? I'm sorry, what would make a better case? Well, you've got a lengthy delay. He's asking for reopening here, and there is some evidence of mental disability. Wouldn't that mental disability give a stronger argument for assisting him? Well, I want to make sure we keep our terminology straight because, of course, the duty to assist that the VA has really is about helping the veteran take records and letting the veteran know what he or she needs to do to make a claim. Well, if the person is incompetent and is receiving an award, the VA will make a determination. But there's an obligation to assist somebody who is incompetent, isn't there? Just generally, I'm not sure that there is. Tell me so that I can understand. How do you think, how does the government think that these incompetence situations ought to be handled? Obviously, it's a very difficult situation. There's a lot of case law, at least on the constitutional side. What do you think the rule ought to be where there is a suggestion that a veteran is incompetent? Is there a process, right? Is there a statutory right? How should it be addressed? I think it really would depend on the facts of each case, and I don't think that this is—I know that's not— That doesn't do it for me. I'm not asking you to address the facts of this case. I'm asking you what's the legal gene, what are the rights that ought to exist here, and how should these questions be resolved? When there has been a determination, you know, when the veteran is receiving benefits and has been determined to be— you know, that their mental illness would make them incompetent, there is a protection. But that's after the determination of the title. The question is what about the ones that are still pressing the claim and it hasn't been adjudicated in their favor? And I agree that that's a—it's a difficult, factual scenario. But, again, there's opportunities to have representatives. There's a strong statutory regulatory system in place to provide as clear notice and opportunities to be heard in hearings and rights to representation as possible. And maybe another way to resolve that question would be that there is a regulatory method for, for example, to extend that one-year time period to submit new evidence or to appeal if the party asks the Secretary for an extension of time, which can be done out of time. And so certainly that would have been perhaps another method for Mr. Edwards to come back later and say, can I have an extension of time out of time because I was not mentally incompetent? What if he were to apply now for an extension of time? Would he get a hearing on whether he was incompetent during the entire 10-year period? I'm not sure he would get a hearing. He may get some medical—he may get some development. Would he be—given the best possible facts for—assuming the best possible facts for him, would he be entitled to what now would be what almost 20-year extension of time? I mean, is that an open possibility? I believe it would be, and I can confirm that with the VA. But I don't believe there is a limitation on that. Which would give—if true, which would give him a way of reopening the 1988 potential time period, right? That's correct. Thank you. Ms. Barney, you have three minutes remaining. Thank you, Your Honor. The first thing I'd like to address is the question of whether this was raised below. And you are correct, Judge Bryson. The briefs from the CABC are not on the record. We'd be happy to submit them. Although I do have a copy of the— Maybe you can help us with that. I have a copy of the appellate supplemental brief at the CABC. And certainly the due process claim was raised. That was one of two alternative arguments that Mr. Edwards raised. And specifically in his supplemental brief, he cites the Schrader case. And he points out that in Schrader, the Court of Appeals decided that under basic due process principles, and he knows mentally the claimant was entitled to an evidentiary hearing on his mental competency. Thus, Schrader explained, if the Secretary fails to apply this evidentiary hearing, then the claim effectively remains non-final. So I would submit that it certainly was raised. That's page 7 of the supplemental brief. And we would be happy to submit that into the record after the oral argument. The other point that I wanted to address, actually, was your question, Judge Dyke, because as I was sitting down, I thought of something that I wished I had said. And your question was, if there's a statutory requirement or a regulatory requirement to provide a guardian ad litem to a known mentally disabled applicant, isn't that the best procedural route to follow rather than trying to go due process? And my answer to that question is, in cookley principi, this Court held en banc that even a grave procedural error does not toll the finality of an otherwise final decision unless it rises to the level of clear and unmistakable error. So my fear, Judge Dyke, is that even something as grave as the failure to follow a regulation that requires a claimant of a guardian ad litem will be qualified as merely a grave procedural error, which will not toll finality. So the way I read this Court's opinion in cook is, in order to toll finality, it has to fall into one of the buckets of clear and unmistakable error. Or it has to be a complete failure of notice, which was the recent decision in AG versus Peek. Or it has to be a due process or a constitutional error, which is why I believe we've phrased it the way we've phrased it today. What do you say to the last suggestion that the government made that there may still be an option through a motion to an extension of time application? I am not sure about that, but I hesitate to state on the record that it's incorrect, because I don't feel qualified at this point to address that. We'd be happy to supplement the briefing on that. If that were open, wouldn't that provide a mechanism for adjudicating the whole question of competence? I mean, it's going to have to be adjudicated 20 years out of date anyway. But if that is a mechanism, why isn't that an adequate mechanism? It could be. The government seems to suggest that they wouldn't have an objection to doing it that way. Maybe I'm over-reading your statement. I would propose that if the court is interested in that issue, that the parties can submit something on a briefing on it. I don't feel that I can address it right now. I may do adequate justice to it, and I apologize for that. In case the court has any other questions otherwise. Could we, in light of our discussion this morning, ask the parties to indeed supply additional briefing on the subject we've been discussing, particularly with Judge Bryson, about the availability of an extensional client at this point, and its sufficiency to address some of the competency issues. Could you do that within, let it be ambitious, a week? Could that be done, Mr. Barney, Ms. Hogan? We have no objection to that at all. Thank you. We'll look forward to hearing from you on supplemental briefing. Thank you. The next case will be a story of-